518 So.2d 1189 (1987)
LIFE INSURANCE COMPANY OF MISSISSIPPI
v.
Isom D. (Buddy) ALLEN.
No. 55583.
Supreme Court of Mississippi.
December 16, 1987.
Rehearing Denied February 10, 1988.
*1190 Earl Keyes, W. Richard Johnson, Keyes, Moss, Piazza & Woods, Jackson, for appellant.
Eddie H. Bowen, Raleigh, for appellee.
Before ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, J.
ROBERTSON, Justice, for the Court:

I.
Today's case presents a modest variation on a theme by Veal,[1] modest in the sense that the jury assessed an insurer only $20,000.00 in punitive damages for its grossly neglectful denial of a legitimate claim on a credit life disability insurance policy. As the jury's verdict was within the law and evidence, we affirm on direct appeal.
On cross-appeal we reverse the Circuit Court's $10,000.00 remittitur order and render judgment here for Plaintiff/Cross-Appellant.

II.

A.
On August 17, 1981, Isom D. (Buddy) Allen, Plaintiff below and Appellee/Cross-Appellant here, entered into an *1191 installment sale contract with Magee Motors, Inc., for the purchase of a used 1977 Chevrolet Corvette. Included in the contract was a requirement that Allen purchase credit disability insurance, which Allen did at a cost of $355.88 plus interest. At issue is a claim filed under the disability insurance policy.
The insurer, Life Insurance Company of Mississippi,[2] asserts as a defense that a preexisting injury exclusion clause contained in the policy of insurance absolves it from liability. Life of Mississippi was the Defendant below and is the Appellant/Cross-Appellee here. The clause reads:
EXCLUSIONS  DISABILITY: The Disability Insurance coverage under this policy does not cover any disability caused by or resulting from: (1) pregnancy, childbirth, or miscarriage, or any complications arising therefrom, (2) declared or undeclared war, (3) any disability occurring while Insured Debtor is on active military duty, (4) intentionally self-inflicted injury or sickness, (5) sickness or injury contracted or sustained prior to the Certificate Date.

Plaintiff Allen is a resident of Magee, in Simpson County, Mississippi. At the time of the transaction in question he was employed as a driller in an oil field by Hilyard Drilling Company. Allen testified that Larry Johnson, the salesman who sold him both the car and the insurance policies, told him that on the disability policy, if he (Allen) became ill or injured in any way and was unable to work, the policy would provide for his monthly payments until he recovered. He was never furnished with the actual policy statement itself and the only proof of purchase was in his installment sales contract.
On February 9, 1982, Allen suffered an injury to his shoulder while he was working with a piece of equipment on the oil rig. He suffered a shoulder separation and underwent surgery for this injury in March of 1982. Dr. J. Elmer Nix, an orthopedic surgeon in Jackson, performed the surgery. Allen was disabled from February 9, 1982, the date of the injury, to August of the same year when he was released by the doctor. Allen filed a claim with Life of Mississippi which it denied on the ground that the injury was the result of a preexisting injury suffered in 1980. He subsequently filed four claims all of which were denied by Life of Mississippi on the same ground. He further testified that Life of Mississippi's claims adjuster, Jeannie Covey, hung up on him when he tried to talk to her about the claim. Covey denied under oath that she ever hung up on him or on any customer.
After Allen bought the insurance policy on the 17th of August, 1981, he pulled a muscle in his arm and left shoulder (same) for which he saw Dr. Nix who advised him to take a week off, which he did. He returned to work after that week, did not file any claim and continued to work until the February 9 injury. In 1980, he had suffered a broken collarbone when something fell on his shoulder but was released to return to work in December of that same year. Allen enumerated numerous alleged injuries  some emotional and domestic  that he suffered because of Life of Mississippi's refusal to make payments on the loan. Because Life of Mississippi refused to honor its policy, Allen was forced to defend a replevin action brought by Ford Motor Credit Company.
Claims adjuster Jeannie Covey acknowledged that Allen was covered by the Life of Mississippi policy, and that Allen had paid all the necessary premiums, that he filed a claim for disability benefits on March 31, 1982, which appeared to her to be the result of a preexisting condition. She also testified that Life of Mississippi turned down the claim based on information obtained from the medical records, which showed that in spite of Allen's injury in 1980, said injury had healed. The injury which Allen suffered in 1980 was a fracture *1192 of the acromion, while the injury for which disability is claimed here is a dislocated shoulder.
Dr. Nix testified that he had treated Allen in August of 1980 for a broken collarbone  the result of a hose falling on his shoulder. By December 19, 1980, when he saw Allen, the fracture had healed and he released him to return to work. He reached maximum medical recovery between December 1980 and November 1981. He saw him again on February 10, 1982, and he (Allen) was complaining of pain to the shoulder, such pain due to the injury here at issue. Dr. Nix diagnosed Allen's February 10 injury as a partially dislocating shoulder.
With regard to the preexisting injury point, Dr. Nix further stated:
There is no way that I can state definitely that the two injuries are totally separate, but based on the information I have, including x-rays, physical information and the information I obtained from the patient, it is my opinion that the patient recovered from the initial injury and then the dislocating shoulder was a separate entity that was due to the injury occurring when he was pulling on something with the left arm, and this injury occurred sometime in February of 1982. So basically, what I am saying is I think they were two separate problems.
No one associated with Life of Mississippi ever called Dr. Nix or otherwise communicated with him.

B.
Plaintiff Allen commenced this civil action by filing his complaint in the Circuit Court of Simpson County on September 8, 1982. Life Insurance Company of Mississippi was the principal defendant. Allen sought contract damages and, for Life of Mississippi's bad faith refusal to pay the contract claim, he sought punitive damages as well.
The case went to trial in September of 1983. Life of Mississippi objected to the submission to the jury of the issue of punitive damages. The objection was overruled. After due deliberation, the jury returned a verdict for $2,410.04 in contract damages and $20,000.00 in punitive damages.
Upon Life of Mississippi's post-trial motion, the Court ordered a remittitur in the amount of $10,000.00 on the award of punitive damages, which Allen accepted. Life of Mississippi now appeals, and Allen cross-appeals.

III.
Life of Mississippi first argues that the Circuit Court erred in denying its request for a peremptory instruction on the contract claim. It argues that the exclusion clause being valid and enforceable, Ford Life Insurance Company v. Shannon, 328 So.2d 342 (Miss. 1976), and not ambiguous, it properly denied payments on a claim that it determined to have arisen from a preexisting injury. Blue Cross & Blue Shield of MS, Inc. v. Mosley, 317 So.2d 58 (Miss. 1975).
Allen takes no exception to the validity of the exclusion clause. Instead, Allen claims that his two injuries were separate and distinct, and that the injury from which his claim arose did not preexist the policy; it occurred on February 9 as was corroborated by the treating physician.
Without contradiction, on February 9, 1982, Allen suffered an injury to his left shoulder while he was working as a driller for Hilyard Drilling Company. As he described the way and manner in which the injury occurred: "I had a pipe wrench and I was pulling on a connection on a pump and when I pulled on it, my arm dislocated. The pain was in the lower part of my shoulder and down into my arm."
The treating physician, Dr. Nix, stated in his deposition, as read to the jury, that he treated Allen for a fracture to the base of the acromion, which is part of the shoulder blade, in 1980. He released him on December 19, 1980; that the patient reached maximum medical recovery probably in November of 1981. He saw the claimant again on February 10, 1982, and he complained of the injury that is the subject of this litigation.
*1193 Dr. Nix gave his opinion that the 1980 injury had healed and that the 1982 injury was wholly separate and without causal relation to the 1980 injury. At no time has Life of Mississippi secured or produced a contrary medical opinion. It is Dr. Nix' opinion that Allen was disabled on February 10, when he saw him, until August 4, when he released him to go back to work. The two injuries are not the same as contended by the insurance company.
In the face of such incontrovertible evidence, Life of Mississippi's contention that the jury verdict on the issue of liability was contrary to the overwhelming weight of the evidence is without merit. The Circuit Court did not err in denying the peremptory instruction or the motion for j.n.o.v. See Travelers Indem. Co. v. Rawson, 222 So.2d 131 (Miss. 1969); Jesco, Inc. v. Whitehead, 451 So.2d 706, 713-14 (Miss. 1984).
The assignment of error is denied.

IV.
Life of Mississippi next argues that the Circuit Court erred when it submitted the punitive damages issue to the jury. Put otherwise, Life of Mississippi urges that the evidence was insufficient as a matter of law to support an assessment of punitive damages.
The bad faith refusal tort has become far too familiar in our jurisprudence to require extended discussion. It arises when an insurer's refusal timely to pay a just claim is sufficiently egregious that we label it an independent tort. See, e.g., Blue Cross & Blue Shield of Miss., Inc. v. Maas, 516 So.2d 495, 496 (Miss. 1987); Weems v. American Security Insurance Co., 486 So.2d 1222, 1226 (Miss. 1986); Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, 269 (Miss. 1985). Where an insurer has acted with malice or with gross negligence and reckless disregard for the rights of the insured, punitive damages may be assessed. Blue Cross, supra, at 497; Scott v. Transport Indemnity Co., 513 So.2d 889, 896-97 (Miss. 1987); Aetna Casualty & Surety Co. v. Day, 487 So.2d 830, 832 (Miss. 1986).
In deciding whether a punitive damages instruction should be given in a bad faith refusal case, the trial court proceeds as in any other case where objection is made to submission to the jury of an issue of fact. The reviewing court must look at the elements of the punitive damages claim just enumerated and decide whether, under the totality of the circumstances and viewing the insurer's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found that either malice or gross neglect/reckless disregard had been established. See Scott v. Transport Indemnity Co., 513 So.2d at 897; Mississippi Farm Bureau Insurance Co. v. Todd, 492 So.2d 919, 933 (Miss. 1986); see generally Stubblefield v. Jesco, Inc., 464 So.2d 47, 54 (Miss. 1985); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
Applying the aforesaid standard of review to the facts, we take it as established in this case that Life of Mississippi when it reviewed and denied the claim had before it no evidence that Allen's claim was in fact based on any preexisting condition. Rather, the medical records from Dr. Nix reflected quite clearly the contrary; Allen's previous injury had healed and the new injury was of independent origins. Making Life of Mississippi's conduct more egregious, claims adjuster Covey didn't even bother to check with Dr. Nix or any other physician before denying the claim. This could have been done with a simple phone call or letter. Beyond this, when Allen attempted to call Covey and discuss the matter she hung up on him and refused to talk.
Certainly, had the jury refused to award punitive damages on this proof, such a verdict would have been beyond our authority to disturb. In fact, however, the jury did return a verdict for punitive damages, although considerably more modest than many we have reviewed in recent years. Out of deference to the jury's verdict in accordance with the rules of law and principles of appellate review enumerated above, we decline to disturb the judgment below. See Blue Cross & Blue Shield of *1194 Miss. Inc. v. Maas, 516 So.2d 495, 498 (Miss. 1987).

V.
Allen cross-appeals the order of the Circuit Court directing a reduction of the punitive damages award from $20,000.00 to $10,000.00 and a remittitur to that effect. On October 7, 1983, Allen filed in the Circuit Court a "notice of acceptance of remittitur." By that filing he accepted the remittitur of $10,000.00 in lieu of a new trial on the issue of punitive damages. Life Insurance Company of Mississippi argues that this action constitutes a waiver of his right here to complain of the remittitur. To be sure, this once was the law. See Friendly Finance Co. v. Mallett, 243 So.2d 403, 407 (Miss. 1971). The point is now controlled by statute. Miss. Code Ann. § 11-1-55 (Supp. 1987) in relevant part provides:
If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross-appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.
This statute gives Allen the right to present his cross-appeal notwithstanding his acceptance of the remittitur in the Circuit Court.[3]
Our question then is whether the $20,000.00 jury assessment of punitive damages is so grossly excessive that it should be judicially reduced. Our law is found in Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, 277-79 (Miss. 1985). We are not authorized to disturb a jury verdict regarding punitive damages because it "seems too high" or "seems too low". Only where the verdict is so excessive that it evinces passion, bias and prejudice on the part of the jury so as to shock the judicial conscience may we interfere. Suffice it to say that with little doubt our conscience experiences no such shock upon the encounter of a $20,000.00 punitive damages assessment in the case at bar.
Allen's cross-appeal has merit. The order of the Circuit Court directing the remittitur is reversed and the jury verdict for $20,000.00 in punitive damages is reinstated and judgment is here entered thereon.
ON DIRECT APPEAL, AFFIRMED; ON CROSS-APPEAL, REVERSED AND RENDERED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] See Standard Life Insurance Co. of Indiana v. Veal, 354 So.2d 239 (Miss. 1977).
[2] On January 1, 1982, Sunbelt Life Insurance merged with Life of Mississippi and the latter assumed all contracts, assets and liabilities of the former. At the close of Plaintiff's case all other Defendants except Life of Mississippi were dismissed from the suit and none is a party to this appeal.
[3] By way of contrast, we note that the federal rule on this point of procedure is to the contrary; that is, that one accepting a remittitur is barred from challenging it on appeal. Richards v. Allstate Insurance Co., 693 F.2d 502, 506 (5th Cir.1982).